With that, why don't we begin with our first case of the morning, Appeal No. 22-14-20, Terrell Wesley v. Tyrone Baker. Mr. Barney, good morning. May it please the Court, my name is Ian Barney and I represent the appellant, Terrell Wesley. This is an appeal of the denial of Mr. Wesley's petition for writ of habeas corpus in the Sixth Amendment right to make a closing argument when the trial court in his bench trial entered findings of fact in the finding of guilty before allowing Mr. Wesley to argue the case. Mr. Wesley asked this Court to reverse the District Court's decision denying him habeas relief because the issue, excuse me, the right at issue in this case was clearly established by the Supreme Court in Herring v. New York and the Illinois Appellate Court's decision affirming Mr. Wesley's conviction involved an unreasonable application of Herring. In Herring, the Court struck down a state statute that essentially gave trial judges the discretion to deny a defendant the right to give a closing argument. In striking down the statute, the Court analyzed the historical significance of closing arguments and also identified the critical purposes. But doesn't your argument somewhat hinge on a factual determination that the Illinois Appellate Court did not find and that's whether or not the closing argument was given before the verdict? Your Honor, I don't believe it does because I think it's pretty clear that the closing argument in this case did occur before the verdict. What happened is there was a motion for a directed finding of not guilty that was denied. The judge then recessed for the night and said I'm going to review my notes. Reviewed apparently her notes over the recess, came back the following morning. The case then proceeded and before anything else could happen in the case, the judge entered findings of fact including making credibility determinations, made comments about impeachment, and then found Mr. Wesley guilty. At that point, no closing argument had taken place. Of course, what happened after that is there was some discussion of defense counsel objected. I'd like to argue the case. The judge apologized. I apologized. Gave him the opportunity to argue and then there were closing arguments. And then immediately, and I think this is actually pretty significant, immediately after the closing arguments, without a recess, the judge found Mr. Wesley guilty again. Under those facts, there's just no way that what happened in this case could vindicate the right that Herring discusses. And in identifying the right to give a closing argument, Herring talks about the purposes that the right serves. Specifically, closing arguments serve to sharpen and clarify the issues for the trier of fact, allows the defendant to highlight the weaknesses in the prosecution's case, and gives the defendant the opportunity to identify inferences that can be drawn from the evidence. In talking about those purposes... But the Illinois Appellate Court found the opposite, that the trial judge was merely stating or beginning to state her findings when she was interrupted and told we haven't presented argument. And I think that is totally contradicted by the record. That comment that... The idea that she had only begun to make her findings. The record is clear and this is... I do have a... Even if you're right about that, though, Mr. Barney, what you have, though, is you have the trial judge here saying, I made a mistake. We're all human. I'm going to let you make your closing arguments. And then the trial judge proceeded to do just that. And the closing arguments were not cursory, right? They weren't just 15 seconds apiece. I mean, they went on for a while. And then the trial judge said that everything had been reconsidered in light of the closing arguments. But because the trial judge had sat through the presentation of evidence, it's not surprising that the trial judge's view didn't change. Our closing arguments are just that. They're not evidence. They're arguments. And so the trial judge said, I've reconsidered everything, and then officially entered the verdict. That just seems very different than the Haring circumstance where you have a New York statute that, as a structural matter, categorically allows verdicts to be rendered in bench trials before closing arguments. That's what the Supreme Court had a problem with in Haring. This is more of a mistake situation that the trial judge then cured. And Judge, I don't believe that makes a material difference in the outcome of this case. And why not? The reason for that is because in Haring, the court was very clear that closing arguments come at a particular time in the proceeding. They come after all the evidence is in, but before the submission of the case to judgment. And there's even a footnote. The court, I think, in Haring was very clear about the timing requirement that it was putting in the case. There's even a footnote. I think it's footnote 13 where it explains, we're not saying the defendant has a right to give a closing argument at any other point in the proceeding, trial court or appellate process. So it's aware that this right is very much dependent on when it's afforded. And when the trial court first enters that finding of guilty, the horse has left the barn. One case says you can't unring the bell. And I think Spence v. State, it's a state court case, Court of Appeals of Maryland. I know it's not precedential, but it's persuasive. And I think the court puts it perfectly there. It describes a defendant arguing to a judge who's already found him guilty as akin to whistling in the wind. But the state appellate courts are divided on this, right? I mean, I'm sure that's what your adversary is going to point out. And given the different perspectives that state courts have held on this, interpreting Haring, applying the Haring ruling, how can we say under 2254D and the standard that the Supreme Court announced in Harrington v. Richter that your client's position is beyond fair-minded disagreement? I mean, that's the standard. I mean, you know that. I mean, he's got a tough burden here. It is a high burden. There's no question about it. But I think what's important to recognize is there's actually a distinction when analyzing the rules and whether or not there's an unreasonable application. There's general rules. And when you're talking about this, and this is in Yarbrough v. Alvarado, when you're looking at a general rule, courts have a lot of leeway in applying the rule. So it's very hard to prove that a rule was applied unreasonably if the rule is general. But if the rule is specific, and this is a quote, the range of reasonable judgment may be narrow. Applications of the rule may be plainly correct or incorrect. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. This is a very specific rule. A defendant is allowed the opportunity to give a closing argument after the close of evidence but before submission of the case to judgment. That did not happen in this case. And so I think the Illinois Appellate Court's decision, unreasonably applied hearing, it was incorrect. It's a specific rule. So I think the burden, although it is high, certainly Mr. Wozniak acknowledges that, it's not quite as high as I think Respondent points out in their opening brief because it's different than if this is a general rule and there's leeway afforded to courts in applying it. In Harrington, though, he says there's fair-minded disagreement, right? And so, as Judge Scudder just articulated, there are courts that have looked at this same question and come out differently. And so how will we be able to say, based on that, that that would be an unreasonable application of hearing? How do we get to that? That's where Judge Scudder's question is going. Sure, and I think that hinges on the misapplication of hearing by the district court, in this case the Illinois Appellate Court, in this case, and other state courts that have looked at this and ruled the other way. I mean, I think there's a significant number that have come down on Mr. Wesley's side. But the courts that have come down the other way, the reasoning tends to be because there was ultimately an argument, there was no absolute denial of the right, which is the language that Haring uses. Yeah, I mean, what you're saying is that Haring announced a very strict rule. And you make a very fair point. It's a serious rule. Indeed, it's subject to structural error under a chronic analysis. And when it's not adhered to, it reflects reversible error. I mean, that's the line you're taking. Absolutely, Judge. And regarding the absolute denial language in Haring, that is specifically in reference to the court saying, look, we're not saying that you can't impose reasonable limits on duration and scope of arguments. So I think that's the context that's missing from those state court positions. Why don't we hear from the state? We'll give you that last minute on rebuttal. Thank you, Judge. Okay, you're welcome. Ms. O'Connell, good morning. May it please the Court, Assistant Attorney General Aaron O'Connell, on behalf of the respondent warden. I'm going to agree that the rule Haring set forth is extremely specific. I think we need to back up, though, and kind of start where we started with the questioning before. Was there a verdict rendered before closing argument? And if so, was that in error? So both the trial judge and the state appellate court looked at the record and said no. There was no final verdict entered before closing arguments had been heard. The court had given a preliminary indication of what its view of the evidence was. It said, I would make a finding of guilty. Counsel immediately interjected at that point and said, we haven't made our closing arguments yet. And the court apologized, clearly not intending to foreclose closing arguments, and said, please present foreclosing arguments. After the closing arguments, the court then made very clear on the record that it had fully considered those arguments, reconsidered its positions, and was finding defendant guilty. But I don't think it was soon as she said, I would make a finding of guilty. There is a ruling on directed verdict the day before. And then when we come back the next morning, she walks through her analysis in detail, walks through the evidence that was presented at trial, talks through the credibility of the witnesses and how they were viewed. She was, you know, a bench trial and says, for all these reasons, the court would make a finding of guilty in this case. And so it's at the completion of that that Wesley's lawyer interjects, Judge, we have not made a closing. And then she proceeds to allow them to make a closing. So I don't want to misrepresent the record. And so after that closing argument, she then goes back, we look at the record and says, I would find the defendant guilty. So the same I would that you used before. So that's not a change. That's correct. So the record I think is susceptible to more than one interpretation as to what the court meant at that time. And here we have both state courts at both levels looking at that record and reasonably saying the court had not yet entered its verdict at that time. Suppose it went the other way. Suppose hypothetically that the judge said in no uncertain terms, my verdict is one of guilt. And then both lawyers said, well, hold on, hold on. There's not been closing arguments. And the judge said, oh, you're right. I made a mistake. Let me hear closing arguments. And then said, I've changed my mind. I have reasonable doubt. And the verdict I initially announced, I'm changing. And I'm now entering a verdict for the defendant. I can't imagine the state would take the position that the judge couldn't withdraw the prior ruling. And you would say you can't change your mind. You're bound by your initial verdict. That seems entirely implausible to me. And therefore, whether there was an initial verdict or not, it seems to me a trial judge is allowed to recognize a mistake, withdraw a ruling, hear argument, and then come to a fresh conclusion. Absolutely. So it wouldn't have been a violation of hearing even if the court had made a final verdict. So we do have an interpretation of the record. Because the judge allowed closing arguments to happen.  And courts have looked at this exact factual scenario, said even if you have a formal verdict of guilty, if the court vacates that verdict and hears closing arguments, then there's been no violation of hearing and there's no structural error. So even if the court were to adopt the alternative interpretation of the record that the state court did not and said this was a verdict of guilty that was vacated, that nevertheless would not have violated hearing. And courts have, on that exact factual scenario, People v. Little is an example, held that that's not a violation of hearing. And they've even explained why, under fundamental principles, hearing's concern is making sure we have an open-minded fact finder who's willing to listen to the closing arguments presented. So that is not a violation of hearing. But we do, even on defendants' reading that this verdict of guilty is a bright-line rule, we still have the state court's interpretation of the record, which is reasonable, and to which this court has to defer on habeas review. And so I think that this argument would, in essence, be waived because it wasn't raised below on behalf of the government. So I agree. Let's move to hearing and the application. I'm sorry, which argument? You go ahead. The application of hearing and why that was not unreasonable because this argument regarding whether or not would be, would make a finding of guilty, that argument was not raised below. I think we did have a short argument on behalf of the government and did focus solely on the legal landscape here.  And then the district court did rely on the model legal landscape to say that that was enough to preclude habeas relief under the clearly established law principle. So the Supreme Court, in hearing itself, was clear in its terms as to what the rule was. It was a total denial of closing argument. It was a denial of any opportunity for closing argument. But the court has, after hearing, addressed it once again in the habeas context in Glebe versus Frost. And I would direct the court there, the Supreme Court reversed a grant of habeas relief on a hearing claim there. And it made clear that it was improper to extend hearing outside of the context of a total denial of closing argument. So in Glebe, the issue was that there was a partial denial of closing argument. The trial court said you can't argue one alternative theory. The Ninth Circuit said, well, that violates the general principle of hearing. And the Supreme Court reversed in a per curiam decision and said that that was wrong and hearing should be limited to the total denial of closing argument. So in this context as well, it would require an extension of hearing that would be improper on habeas review. So this court should affirm the judgment denying habeas relief. Okay. Very well. Thank you, Ms. O'Connell. Mr. Barney, we'll give you that one minute. There was some discussion about the issue of what if it was flipped? What if the verdict came down in a different way and then there were subsequently closing arguments? I mean, I think that's an important point. The verdict in a criminal case is a momentous point in the case. I mean, it is the culmination of everything. Spence v. State calls it the moment which signals the defendant's fate. And I think that's important, that word fate, because it gives the import of that decision. And that's what happened in this case. The judge signaled the defendant's fate when she found him guilty without first hearing closing arguments. He never had the opportunity, never had the opportunity to convince her that he had not been proven guilty beyond a reasonable doubt. I cited all types of social science studies about cognitive confirmation bias and belief perseverance. But what hearing does is it puts those into a rule form. You don't need the science. It's common sense. Not having the opportunity to argue. Judge, I see my opportunity. Go ahead. Go ahead. You can finish your thought. Not having the opportunity to argue before a verdict is rendered is a violation of hearing. It's squarely within hearing. And for that reason, Mr. Wesley would ask that this court reverse the district court's decision. Thank you very much. OK, very well. Mr. Barney, did you take this case on appointment? I did not. Well, nonetheless, you've done a fine job for your client. We appreciate it. Ms. O'Connell, thanks to you and the state, we'll take the appeal under advisement.